Mr. Roth, whenever you're ready. May it please the Court, Yakov Roth on behalf of Eli Lilly. Your Honor, Section 216B allows similarly situated employees to sue together, and the Supreme Court has authorized district courts to send out notice to facilitate that collective proceeding. Our position is simply that courts should not send that notice and invite people to join that lawsuit without first determining that they are likely to be similarly situated. And that means, contrary to Lusardi, looking at all the evidence, considering all of the issues, and demanding a meaningful showing by the plaintiff. Now I think Richards actually agrees that that more robust analysis that does consider both sides' evidence and does consider all the issues is appropriate once a factual record has been developed. And she argues instead that courts need to send notice before that discovery, before that factual development occurs, and as a consequence of that, you know, it's not fair to demand a higher standard, a higher showing, because those facts aren't there yet. That seems to me to be both backwards and perverse. If a plaintiff wants to certify a class under Rule 23, for example, we do class cert discovery first, and then we evaluate whether the requirements of Rule 23 are satisfied. If a plaintiff wants a preliminary injunction and the facts are disputed, the court can allow discovery on that issue up front. Generally speaking, we develop the facts first, and then we apply the law to those facts. We don't say, if you file the motion early enough, then we'll lower the bar for your showing. Mr. Roth, under your kind of framework, what kind of third-party discovery, if any, would the defendant seek? Well, I think that it's usually going to be the plaintiff who is seeking more discovery. I only mention it because in one of your briefs you say that third-party discovery might be something that both parties seek. Yeah, I think it's possible that a defendant employer could say, for example, let's say there was a former employee, a former supervisor of the company that had left the company and he had to be deposed to find out what was your policy, what did you do, who did this affect? I could imagine that. I think in the mine run of cases, though, most of the discovery is going to be sought by the plaintiff into the defendant. So the defendant wouldn't go out and subpoena, say, 40 putative plaintiffs to try to establish that they're not similarly situated? I don't think that would typically be necessary. Typically, we're trying to ask at this stage, is there a policy here and what was its scope? Who did it affect? Was it just this state? Is it just this factory? Is it the whole country? So usually the employer is going to be able to say, well, I'll put in my documents, I'll put in my declarations from the relevant executives who can speak to that. I think the plaintiff should, in appropriate cases, be entitled to vet that material, to ask for some of those documents, to maybe take some depositions. That's a consequence of expecting this more robust showing at the threshold, is to say, OK, we're going to do some of the factual work up front. And this court in Bigger, I think- Before we get to Bigger, I have some questions about Bigger. Would you agree that in the discovery process, the district court would have to have wide discretion as to what discovery to allow and when to cut off the discovery? So in other words, even if we were to say that the district court can consider or should consider the defendant's evidence, a lot of the discretion is going to rest within the district judge to either allow discovery or not allow discovery. Yes, Your Honor. I think that's right. There's no way- That's the way it should be. And I think that's the way the Supreme Court is instructed when they deliberately didn't set a test, right? And that's the way it always is. I mean, for all issues, that's the way it is. I think that district courts have discretion supervising discovery. I don't see any reason why that would be different here. So I think, yes, district courts have discretion in authorizing that discovery. I also think district courts have discretion in applying the standard that this court adopts, whatever it may be, to the facts that are developed in the similarly situated test. It's not going to be necessarily a bright line. So the court has to evaluate the factual materials in the record. The court is going to have to maybe do some balancing and weighing of the evidence and make a determination as to whether a sufficient showing of similarity has been made so that it makes sense for this case to proceed on a collective basis. So you would allow a district court, and maybe even require a district court, then to make findings on any issue about being similarly situated, including the merits? Yes, Your Honor. If there is an overlap between the merits and the similarity- Litigate class discovery for merits discovery, which is not much at all. So litigate the whole merits. Well, I think it depends on the case, Your Honor, because sometimes there's going to be more overlap and sometimes less. I mean, what the Supreme Court said in Dukes is you can't really avoid that. I mean, if you have to make this determination about commonality, it's sometimes going to require looking at questions that overlap with the merits. So what source of law do you think Lusardi conflicts with, keeping in mind that in Hoffman LaRoche, the district judge applied Lusardi? Yes, and the Supreme Court didn't consider that in Hoffman LaRoche. It also didn't reverse. It did not. And it's hard to see an abuse of discretion there. Well, Your Honor, here's what I would say. In Bigger, this court construed Hoffman LaRoche and the principles behind Hoffman LaRoche and said those principles require, in the context of arbitration agreements, undertaking this inquiry at the front end and allowing defendants to present their evidence and making these determinations so that we don't end up with this sending to a jury. And you read Bigger as, in essence, the sliver that opens the door wide open to all issues, all defenses, all merits. I think it goes quite a ways towards that. Despite its disclaimers. Yeah, I mean, it wasn't dealing with the broader issue. It was dealing with the issue that it was presented with, for sure. But I think what it did tell us and what it does teach us is, number one, it's not unbridled discretion. Because if it was just unbridled discretion, as Richard says here, the result in Bigger would have been, you know, district court should figure out how to deal with this problem and sort it out, rather than this very prescriptive approach that this court laid out. So does Lusardi conflict with 216B? I think it conflicts with 216B and the principles of Hoffman. Because I think the question, for the same reasons that Bigger said, sending notice out to people who have signed arbitration agreements, conflicts with the principles of Hoffman-LaRoche. 216B just talks about similarly situated. And I think the proper reading of 216B together with Hoffman-LaRoche is the goal of this undertaking is to get similarly situated people notified. But we don't want to notify people who are not similarly situated, because that's going to mislead them. It's going to lead to the potential for abuse that the court talks about in Bigger. It's going to be a waste of resources, because at the back end, we're going to have to come back and undo it more than half the time, as is the case under Lusardi. Let's talk about that. And as you said in your reply brief, noting the statistics that have been submitted, a standard that operates, quote, as intended, yet leads to reversal a majority of the time is a standard that needs to be replaced. You think that accurately describes the statistics about Lusardi? I think it does, Your Honor, because the plaintiff says 50 to 60 percent of the time, decertification is granted. Have you looked at the underlying statistics? Not case by case, Your Honor. Not case by case. But the claim you're making in your reply brief is spectacularly wrong and misleading. And I hope these statistics are not being used in district courts nationally. The Saferth numbers indicate that somewhere between 250 and 300 of these motions are filed every year nationally, right? Certification motions, Your Honor? Yes. Yes. And about somewhere between 79 and 84 percent of those are granted, right? So more, 200, give or take a little more every year. The decertification statistics that you're relying on apply to 12 cases in 2020, 24 in 2019. So that sounds like 4 percent, 5 percent are reversed. Could you explain this to me? So the way I understand it, Your Honor, and I'm certainly not trying to be misleading, the way I understand it is most of the cases don't reach decertification, either because they resolve. Maybe not. We don't know. Or otherwise. They were looking at the cases in which decertification motions are filed. And we expect counsel to use discretion and judgment in deciding whether to seek decertification, right? Yes, Your Honor, but given the way Lusardi works and is designed to work, where basically all of the hard questions are punted to that stage, I think it would be very unusual in a case that involves Lusardi for a defendant not to file a decertification motion, unless of course the facts come out and they're just very one-sided, fine. But given that almost no inquiry is really done at the front end, I would expect to see those motions filed routinely when the case reaches that stage. And yet, we're only seeing a handful. Well, one of the reasons I think the cases don't reach that stage is what this Court pointed out in Bigger, which is that when you hand this tool to the plaintiffs in these cases and allow them to send out, with the prospect of sending out notice, hundreds or thousands or even more employees inviting them to sue their employer, that hands the plaintiff a very significant tool that inflates the settlement leverage the plaintiff has. And the plaintiff agrees most of these cases do settle after the first stage. Are the statistics you've submitted that you're relying on adjusted for any of this? They're not adjusted. They're just... Okay. The claim in your reply brief is downright deceptive. Maybe it's not intentional, but it is highly misleading. I withdraw. Your Honor, I apologize. It's definitely not intended to mislead. We cited the statistics that it was based on. The statistics are clear. Most of the time, decertification motions are not filed because the cases... Well, because... I just don't... We don't know. Yeah. We don't know. But they don't reach... All we can really analyze is when they are filed, what is the outcome? And the outcome is, most of the time, including in Lusardi itself... Maybe half and half, but it's a selection, a population selected by counsel, and it's not reflective of the inputs, and as again, it's highly deceptive, and to the extent you're replying on empirical evidence to undo Lusardi, you've got a problem. Fair enough. So, Your Honor, let me shift and say, forget about empirical evidence, okay? I think that the reasoning from Bigger, that makes the point that we're trying to make, which is, are we going to do the analysis up front, more analysis up front, and try to get it right the first time, or are we going to kick the can down the road and cast a wider net, as plaintiff says, and then winnow it later? And I think Bigger is pretty clear that if we do the latter, there are real problems with that. Mr. Roth, throughout the briefing today, you said that there must be a meaningful showing. Meaningful showing doesn't seem to be a very helpful legal standard. What standard would you articulate as to what amount of burden the plaintiffs have to meet in order to make this initial showing? Your Honor, we think preponderance is the best. That's what we use for Rule 23. Courts understand it. It's readily available. It's what the Fifth Circuit adopted. Sixth Circuit said, no, that maybe is a bit too much. We really should say strong likelihood, which they define to mean something short of 50%, but still strong, and courts are familiar with that from the preliminary injunction context. And we're fine with that, too, because ultimately, we're a lot more concerned about the difference between both of those versus Lusarty, which everyone seems to agree is a very lax, modest, and lenient standard that doesn't require a whole lot more allegations. So under your framework, the district court would have initiated some sort of expedited discovery that's narrowly tailored to the issues of similarly situated. The district court would then make some sort of finding using either preponderance or some other standard, meaningful standard, as you say, before notice issued. One of the advantages of the Lusarty two-step process is that it allows district courts to make that initial determination expeditiously. Having done so myself on numerous occasions, it has the advantage of satisfying Hoffman LaRoche's mandate that district courts get involved early and that notice be timely. The alternative might, in some cases, really kind of stall or delay notice. Discovery might take some time. The district court needs to take some time. As you know, classification decisions don't come down sometimes as quickly as I'm sure you would like. In the meantime, you have the statute of limitations kind of running. Do you think that in this case, for example, the court should adopt the tolling rule that the Supreme Court articulated in American Pipe? That is, any claims by opt-in plaintiffs, the statute of limitations would be told based upon the date of the original filing of the original complaint? Or how do you envision kind of tolling to work in such a case?  So first of all, Your Honor, the tolling issue doesn't arise in age discrimination cases like this one because of the EOC piggybacking rule. So it's an issue for FLSA cases. In FLSA cases, courts usually address it. I just want to make sure I'm clear. So in ADA cases, basically, you're saying the statute basically is told from the way the piggybacking works. That's right. May I continue? Yes. I'm sorry. Judge Kirsch, can you continue? Oh, yes. Of course. Thank you. In FLSA cases, courts usually handle it through equitable tolling, not American Pipe tolling. I think American Pipe tolling, that may be foreclosed by precedent for FLSA, but courts use equitable tolling to address the delays that already exist with respect to getting the notice out. And as Your Honor knows, even if everyone is moving expeditiously, it still takes some time. I mean, in this case, plaintiff didn't move for conditional certification for about three months after filing the complaint. After it was briefed, it took the district court about six months to rule on it. So we're already talking about period of time. I think the type of discovery we're contemplating would be a 60 to 90 day, hopefully, period of time in the average case. Sometimes it could be shorter if the case is simpler. But it seems to me that sort of doctrine is the right way to handle the timing considerations if there are timing considerations. Because the problem with doing it the other way is I think it creates a perverse incentive not to get the discovery done. Because some district courts will apply almost like a sliding scale. If some discovery is done, we'll apply a higher standard. And so plaintiffs don't want to take the discovery because it's going to impose the higher standard. Do you think that defendants might argue that equitable tolling is an individual factor that basically undermines the similarly situated standard? No, I don't think they would argue that. I mean, I think that defendants would, may in certain cases, oppose equitable tolling and say it's not our fault. I think if the defendant is obstructing the discovery or making it take longer, there will be a better case for equitable tolling. And there's, I think, a division already among district courts about exactly what types of back patterns support equitable tolling or don't. And we have a brief here as amicus brief from the Labor Department suggesting that the court should be encouraged broader. The defendant will virtually always be able to say it's not my fault, right? Well, it depends if the defendant is obstructing the discovery, then they may not be able to make that showing. Or how about if the defendant says we want, I mean, 60 to 90 days for discovery sounds pretty optimistic if you want to litigate the merits. Well, that's, I'm not making it up. I mean, that's the time that we've seen in Fifth and Sixth Circuit district courts that some have used. I think we cite one example in the brief for that. Again, it's going to, the realistic, how realistic it is will depend on the nature of the claim. If we're talking about, you know, the employer doesn't give us overtime for donning and doffing and the only dispute is about whether that rule is only in Wisconsin or also in Illinois, that's going to not, that shouldn't take a lot of discovery. If we're talking about is there a pattern or practice of age discrimination across a company that employs tens of thousands of people, that may, that may take longer. That's because it's a much more aggressive and ambitious theory that the plaintiff is undertaking. But I do think the test should be designed not to give the plaintiff the incentive to resist taking that discovery and sorting this out. It's going to have to get sorted out at some point anyway. If we sort it out at the beginning, we avoid all the problems that they've discussed. Okay. Thank you. Thank you, Your Honor. We'll give you some rebuttal. Thank you. Mr. Electon. May it please the court, I have the privilege of representing Monica Richards. This is an age discrimination case and we're talking in the abstract about what the standard should be. But I want to bring back for a moment that this is an age discrimination employment case. It alleges a pattern and practice and every circuit court of appeals that has addressed the standard that should be adopted for notice in an age case has opted for the two-step notice process. And age discrimination cases have the unique circumstances that justify this. This has been the process for 40 years. In fact, Hoffman LaRoche affirmed a Lusardi-type analysis that was used. Lusardi had just come down when the district court, Hoffman LaRoche, issued its decision. In this case, the judge ordered notice to individuals who were similarly situated. Now, that notice was ordered only for individuals who were, one, employed by Eli Lilly, two, worked in the sales and marketing division of the company. We stipulated to that after notice was ordered, were over 40 years of age, applied for a promotional position within the relevant statute of limitations, were qualified for the position under the company's own guidelines, and were not hired for the position. So that really is- Did any of these plaintiffs, were any of these plaintiffs subject to arbitration agreements? No. What if they were? I agree that Bigger forecloses that issue. Okay. So how do we distinguish Bigger? Do we just say the judge has got it wrong or it's just a total outlier and it only applies to arbitration agreements and no other potential defense? What do we do with Bigger? Bigger, by its terms, is a jurisdictional issue. Basically, if someone had an arbitration agreement, given the deference under the FAA, they're not allowed to bring a case. That's all Bigger says, and they say that in Bigger, that that's all they're saying. The point I'm making, though, if you're trying to determine whether in this case the people were similarly situated and the court had to make an analysis early on, they were. They all shared these characteristics. In addition to that, the court had evidence before that there was this policy and practice which the company had put into effect this early career development program that was to the disadvantage of older people, and the EEOC sued on this very policy for hires. Now, what the company is really saying, and they don't really want to admit this, is they're really saying, now, what we want to do to determine similarly situated is we want to go into the merits of this policy, and we want you to determine at an early stage whether or not this policy operated to disadvantage all these people who applied for promotion. So they're basically trying to litigate the merits of the case at this preliminary stage. But here's the problem. It's putting the cart before the horse, because the individuals who know most about what happened to them, they're not parties to the case because they haven't been given notice and they haven't been allowed to opt in. So you're actually making the plaintiff carry a burden which they can't carry. Are you making justicability arguments? No. I don't believe it's a justicability. I'm saying that it's inappropriate to require the plaintiffs to show or to demonstrate to a high likelihood that there's been this discriminatory policy that disadvantaged older people on a case-by-case basis when the people who would have the evidence of what happened to them haven't been allowed into the case. That seems, though, like something that district courts routinely can figure out and parse through in trying to decide what issues to address in making these determinations. My question goes to Eli Lilly's argument that the district court here seemed bound by certain methodologies that it believed were mandated, such as not weighing the evidence, not considering the defendant's contrary evidence, et cetera, et cetera. I guess, number one, do you think that in the first-step analysis that a district court has the ability or should have the ability to consider the entire record before it, to the extent it's relevant to the similarly situated analysis? I think it's the Department of Labor said in their brief, as Neela said in their brief, and as we said, there is discretion in the court as to how to handle it. Different cases are going to pose different problems. Some, like I think this case, you're going to be able to determine similarly situated in an early analysis. And the example I would give you is Swales. In Swales, the question was, who was an independent contractor? Some of the workers owned their own trucks. Some had employees. Some didn't own their own trucks. Some didn't have employees. There, I could foresee why Swales said, well, we can't make this determination now. And I'm not saying the courts don't have that discretion. I'm saying here, though, where everybody was similarly situated in the sense that they had those criteria that I just described. And the only question was, were they victims of a discriminatory policy, which you would have to look at by statistical evidence and case-by-case analysis? You'd be doing discovery for years. And they won't give us that discovery. And the reason is because in every case I've ever done, I've been doing it for a long time, the defendants never give you discovery if you only have one plaintiff. They say, well, we'll give you discovery for the one office that person was in. But they won't. So you'll be years fighting this down the road. And meanwhile, and this is, I think, the most important point, the people who are directly affected by this question of whether or not notice is going to go out are sitting on the sidelines. Wouldn't it be better for the court to know the parameters of who is in the case and then start this analysis, which is provided for in the second stage of notice? Now, there's nothing, though, that prevents you as counsel to go out and seek those people out, right? So if the defendant gives you a list of former employees, say, and that you think that they may be subject to the same practice and policy, you could presumably go out and contact them and see if it would be appropriate for them to opt in. Well, first of all, there are ethical considerations about soliciting. But secondly, the defendants are not going to give up that information. If there's a one or two plaintiff case and you're seeking conditional certification and you ask the court preliminarily for a class list so you can go out and talk to everyone, they're not going to allow it. We've been fighting all this time. We still don't have any of the statistics relating to the promotional system in this case because they keep saying, we'll give it to you for Boston because that's where our client was, but we won't give it to you everywhere else. So I think it's going to create years of delay. And then if we do win, let's say after all this, the court does find someone situated, notice is sent out, then the discovery process starts all over again. Because now when you opt into a case, unlike a Rule 23 case, you're a party plaintiff. So as a party plaintiff, they have the right to take full discovery from you. So you're just restarting the wheel again. And it's going to be an incredible delay. I did want to read you a quote from the Sixth Circuit in Clark. Now, although I think Clark got the standard wrong, the judge in that case, and this is the majority opinion, said, and I think this applies here, nor as a practical matter do we see how a district court can conclusively make similarly situated determinations as to employees who are in no way present in the case. Thus, the other employees themselves might have evidence of similarity. We therefore disagree that a district court can or should determine in absentia whether other employees are similarly situated to the original plaintiffs. If I understood your answers a moment ago correctly, Mr. Lichten, you don't think the district judge's discretion needs to be limited in such a way as to prohibit them from considering defense evidence on whether employees are similarly situated? That's correct, Your Honor. And I think, in fact, when you read the conditional certification decisions, when you read some of your decisions, they do consider it. What they're trying not to do is resolve contested issues. Now, what I'm thinking of, in essence, are not preliminary injunction or Rule 23 decisions, but discovery decisions where we give district judges, we give the rules, and sensible judicial administration give district judges broad discretion to decide what issues to address, how to resolve them procedurally in order to make sensible decisions about the scope and proportionality of discovery. Would you think that kind of discretion is appropriate for these 216B decisions? Well, the problem is, Your Honor, if in order to determine the question of similarly situated, the defendants are going to insist that you have to look at the merits of what happened, of all these promotions, then I don't see any limiting principles because you're probably talking here about a couple hundred promotions over the course of several years. How are you going to limit . . . What should be the limiting principle then? Because it sounds to me like what you're arguing is that we should actually curve the district judge's discretion. As long as there's this very, very moderate evidence of similar situated, notice is required. No. First of all, I think that in this case, given the evidence that we had used, the EEOC lawsuit, the fact that a whistleblower, I'll call him a whistleblower, director of marketing, was present at meetings where it was discussed to have this early career incentive program and to disfavor older employees. Given all of that evidence and given my client's own affidavit, I think the court was right in following the approach that courts have been following for 40 years. Let's give the notice and then see how many people opt in. Maybe some people from some regions won't opt in, and that won't be an issue, and then start what defendants are entitled to, a vigorous discovery process, when we know the parameters of what we're talking about. What I'm saying is it's putting the cart before the horse to first decide the merits of the case and then decide whether to allow people to have notice of it. And if people don't get notice and don't opt in, you have the other problem, which the Supreme Court talked about in Hoffman and LaRoche, which is you're going to have other lawsuits, a multiplicity of lawsuits, where they're going to say, oh, well, they didn't conditionally certify. I'm sorry. They didn't give notice. I didn't get to opt into the case. Therefore, I'm going to bring my own lawsuit. That's what we're trying to avoid, according to Hoffman and LaRoche. I suppose under Hoffman and LaRoche, and this is a little bit unfair to you to put you in this position to defend these, and I get it. You represent one client here in one case, and you want notice sent out in your case. That is correct. I get it, okay? But why don't we just, I guess, if we give the district judges Hoffman and LaRoche, and just tell them apply the standard articulated in Hoffman and LaRoche, you have discretion, okay? You have discretion as to what discovery to allow. You have discretion as to how you want to consider or not consider the merits question. Then it comes down to just what burden of persuasion does the plaintiff have? And how do we deal with the limits in Hoffman and LaRoche saying that district judges should not be in the business of soliciting plaintiffs? If there's such a low burden for plaintiffs to meet in order to get notice? I think, again, it depends upon the case. I think this case, very strongly with the evidence we had used, was appropriate to apply the two-step approach. I think in a case like Swales, it would have been appropriate, not necessarily required, but appropriate for the judge to say there's too much going on with the facts of this case to determine whether they're independent contractors. I'm going to require a little more. But I think that's the discretion that the courts have all talked about and all the circuits have talked about, Hipp, Thiessen, Grayson, Myers versus Hertz, that the court can look at it, use its discretion to determine what's the best approach. I do agree. What about, getting back to Judge Cush's question, but what about the burden of persuasion? I mean, there seems to be some reference in the appellant's brief that some courts use a sliding scale, some courts depend on how much discovery they have. That seems to me to be somewhat inconsistent with the way we approach legal standards, right? And so is there a legal standard or a burden of persuasion that you would advocate for that initial step one determination that should be applied? I think the standard that is currently being used is the appropriate standard. And that's a modest showing? It's a modest showing, but the courts have discretion depending upon the facts. And that's particularly true- So the courts have discretion to change what the burden of persuasion would be in that first step analysis? I think they potentially could. I think the modest showing is appropriate. I think there could be cases where they could say that's not enough. But I think this case, and I want to be clear, this case is an- Well, is there any other area of law you know where a district court has discretion to adopt different standards of proof or burdens of persuasion depending upon the circumstances of the case? Well, but I think Hoffman-LaRoche itself foreshadows that because in Hoffman versus LaRoche, they say the courts have the discretion- But they don't, but Hoffman-LaRoche also said the courts don't have unbridled discretion, right? And so if district courts are just given the discretion to use not only whatever procedure it believes best, but whatever legal standard it believes is best, that seems- I don't know what sort of limits there would be on that discretion then. But if you take this case as an example, Your Honor, if there was a higher burden of proof, anything higher than what we're talking about, then you would be requiring the plaintiffs without the benefit of knowing who wants to opt into the case, of establishing a high likelihood or something like that, that there was discrimination in the promotions that took place, hundreds of promotions, without having full discovery, without having access to the people who have knowledge of what happened to them, it's- But those people, okay, a couple of things. Those people, the putative plaintiffs, let's say, right? They wouldn't be bound by this court's determination, right? If this court said, I don't think that this is similarly situated, then presumably those other plaintiffs can file their own lawsuits, since they're not a party to this case. And so res judicata wouldn't apply to them. Well, but they may very well be bound by not being able to bring it as a collective action, because there's already been a decision, and another judge is likely to follow that. How would that be? They'd have to go back to the judge and ask the judge to change his or her mind. Yes. I'd like to raise a question, a hypothetical for you, Mr. Lickton, that I hope Mr. Roth will also address. Suppose we were to adopt the standard that the defendant advocates here. There's extensive discovery and litigation of the merits, and the district judge on remand says, plaintiffs have made a showing it's more likely than not that this category of people have been discriminated against on the basis of their age. And so now we're going to send notice. I would think that that notice should inform those people about the district judge's preliminary conclusion, that it is more likely than not that the merits, that Lilly loses on the merits. Do you think that would be the logical consequence? Well, there's no court decision that's ever said that, and I still think it would put the plaintiffs at a severe disadvantage in the original proceeding on whether they were. Suppose, I understand that, and I understand you don't like it. I'm trying to consider the possibility, though, if we were to go in that direction, I would think fair, informative notice would have to inform those plaintiffs, potential plaintiffs, about the finding on the merits. I don't think that would, to be frank, I don't think that would cure the problem. It is something, but I don't think it cures the underlying problem that I've been talking about. I understand. Thank you. Okay. Thank you, Mr. Acton. Mr. Ross, we'll give you three minutes. Thank you, Your Honor. I'll try to make three quick points and also address Judge Hamilton's question. First on Bigger, Bigger is not about jurisdiction. That's not what the court said. This court said, if these people can't actually join the suit, they're not eligible to join, we don't want to send them notice telling them they can join, because that amounts to soliciting, it amounts to inviting abuse of the process, it causes all sorts of problems we don't want. Let's figure it out up front so we don't have to deal with these problems. And I think the same logic applies here. Number two, counsel read a quote from Clark. Clark did say that, but Clark then went on to say, nonetheless, quote, to the extent practicable, therefore, court approved notice of the suit should be sent only to employees who are, in fact, similarly situated. It's not a conclusive determination. It may not be a final determination, but you're making a judgment. Are these people likely to be eligible to join this action? If yes, let them know they can join. If not, we shouldn't be inviting them to join the action, because that does amount to solicitation of claims. Number three, with respect to discretion, district judges have broad discretion in applying standards to their cases, but I don't think it's typical to have discretion with respect to the standard itself. Like what burden of proof to apply or what evidence should be considered in that determination. I don't think, I think district courts would appreciate having a standard that they actually apply rather than having parties brief these issues in every single case and asking for a different outcome. And it's not what Bigger, it's not what Bigger does. Bigger doesn't say, figure it out. There are lots of reasonable ways to do this. Bigger was very prescriptive in setting out particular steps the court has to follow to ensure that this problem doesn't occur. I don't see any reason why that wouldn't apply here. But even if the court does allow discretion, I would just add the point that it still requires a vacature and remand here for a couple reasons. One, if this court disagrees with any of the aspects of lucidity that we outlined, the district court thought and said that it would make a difference to the outcome. And even if the court says, we're not picking any standard, but you're not stuck with lucidity, the district court clearly thought this was a legal question. That's why she certified it for appeal. So if it turns out, actually, you don't have to follow lucidity, that itself, I think, would support vacature and remand. Just to clarify one thing that counsel said, we are not trying to litigate the individual discrimination claims up front. What we are trying to determine is, is there sufficient evidence of a common policy that would make it sensible to try the individual discrimination claims collectively? Because there would be this first step of determining, is there actually this regular policy and procedure of favoring younger employees in promotions? If yes, that is sort of the first piece of the claims. And then the individuals would still have to make their individualized showings. Nobody is saying that should happen up front. It's the common policy. That's what ties their claims together. Otherwise, it's just a set of individual claims. Well, let's look at the evidence. You all submitted an affidavit, as I recall, from the man who denied Ms. Richards the promotion she sought, right? And from the senior human resources. Saying we didn't rely on any general policy, right? Well, there's that. But with respect to the policy, I mean, their theory of the policy is there was this early career professionals thing that was in place. And they say, well, look at that. That kind of ties us all together. And what we would like to show, and we would try to show, and would like to have the opportunity to show, is that was about entry-level hiring. It had nothing to do with promotions. And it expired the year before this collective began. Now, I'm not saying that alone should be dispositive without giving them a chance to look at that and test that and discovery. But that's the argument we would like to make. There was no common policy favoring younger employees in promotions. And if that's true, then all we have here, all we would have here by sending out notice, is potentially hundreds or thousands of individuals with completely individualized claims and nothing to tie them together. How big is the Lilly workforce? About 40,000, I believe. So not hundreds of thousands? No, no. Hundreds or thousands. Thank you. So that is how we, counsel said something about identifying the parameters and contours of the suit up front. The way to do that is to figure out, is there actually evidence of a policy here? And how far does it reach, if so? And that's the type of question that we submit should be determined up front. To answer Judge Hamilton's, oh. Go ahead. No, go ahead and answer Judge Hamilton's question. Yeah, I understand Your Honor's point. I don't think that's typically how courts do it in the Fifth and Sixth Circuits, notwithstanding your point. But I think if you had an accurate representation of what the court found, then it's an accurate representation of what the court found. My only correction or clarification would be, the court isn't making a determination on the merits. It's not going to bind anyone on the merits. The court is making a determination, like in the Rule 23 context, that goes to the similarly situated determination. That doesn't affect, at trial, what can be proved or shown. It's a threshold determination that the court has to make in order to determine the scope of the group of people that are affected, either in Rule 23, to certify them here to send them notice. It's not binding on the merits. It just overlaps with the merits. About 99% sometimes. I think, Your Honor, in this type of case, where it's a pattern or practice theory, it's the existence of the common policy that is the part that overlaps. In many cases, there will be no overlap. And I don't think in any cases it's going to be complete overlap. Because even if you do have this preliminary need to do this preliminary determination of a common policy, you're still going to need on the merits to figure out, OK, well, did it affect this person? Did it affect that person? That stuff is not happening up front under any circumstances. Can I ask you a question about collateral estoppel? So let's say that in a case in Northern District of Illinois, the judge considers arguments and denies whatever preliminary determination, let's say. OK? And there's someone who might be part of that collective in Indiana but didn't get any notice, right? Presumably, that person would not be bound in any way by the court's decision, right?  And that person can come and join right now. That person can initiate their own lawsuit, collective lawsuit, against Eli Lilly in Indiana or even here because there's no race judicata. The person can initiate their own lawsuit and the person can join this lawsuit. You don't need notice to opt in. Anyone can come and opt in at any time. So it's not about excluding people. That person can come and opt in. And if the employer wants to say, you don't belong here, the employer can bring a motion to sever or the summary judgment or whatever it may be to separate that out. But certainly, that person is not bound by the determination. OK, thank you, Mr. Ross. And thank you to all counsel in case we take it under advisement.